IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION


| | | |
|---|---|---|
| | § | |
| **MARGIE CASTANEDA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:04-CV-0268-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |


## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed December 20, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on March 9, 2005, and Defendant filed her brief on April 8, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

### I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits on January 28, 2003, alleging disability beginning January 1, 1999. Tr. 12, 66-72. Plaintiff's application was denied initially and upon reconsideration. Tr. 12, 37-42, 44-46. Plaintiff filed a Request for Hearing by

Administrative Law Judge on December 16, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on July 20, 2004.  Tr. 12, 17-33, 47.  Plaintiff, represented by a non-attorney, testified in her own behalf.  Tr. 19-32.  Carol Bennett, a vocational expert ("VE"), appeared but did not testify.  Tr. 12.  The ALJ issued a decision unfavorable to Plaintiff on September 10, 2004.  Tr. 9-16.

In his opinion the ALJ noted that although Plaintiff alleged that her disability began on January 1, 2003, the  specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act as of or subsequent to January 28, 2003, the date of her application.  Tr. 12; 20 C.F.R. § 416.335.  The ALJ found that Plaintiff has a "severe" combination of medically determinable impairments, including bilateral heel spurs, obesity, depression, and borderline intellectual functioning.  Tr. 12A.   He further found that Plaintiff's impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 12A- 13.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ noted the medical evidence indicating Plaintiff's history of bilateral heel spurs and discussed the treatment she received, including prescription medication, which she did not obtain when her medical coverage lapsed, a recommendation to obtain over-the-counter padding for her shoes, injections to both heels, a sensory nerve conduction threshold test, and x-rays.  Tr. 12A.  The ALJ also noted that Plaintiff was obese, being 59 inches tall and weighing between 190 and 195 pounds during the relevant period.  *Id*.

The ALJ also discussed Plaintiff's history of depression and anxiety, for which she received counseling and was prescribed medication.  *Id*.  He noted findings in April, June, and October 2001 indicating that Plaintiff was in good spirits with no evidence of any clinical depression, anxiety, or

agitation.  *Id.*  He also noted that in December 2001, Plaintiff was found to have depressed mood and was mildly guarded, with no evidence of thought disorder, and was experiencing moderate to severe emotional distress characterized by dysphoria, resentment, and anhedonia.  *Id.*  The impression was major depressive disorder, recurrent, with a Global Assessment of Functioning ("GAF") score[1] on Axis V[2] of 55.[3]  *Id.*  The ALJ noted the medication that Plaintiff was prescribed, the counseling she underwent, and the results of a September 2003 psychiatric consultative examination.  *Id.*

The ALJ also noted that Plaintiff reported a history of being slow at work, that upon examination she was extremely slow to answer questions, that December 2001 testing showed certain levels of functioning of 6th grade and below, and that upon subsequent examination she was very slow in answering although motivation appeared to be adequate. Other testing indicated that she functioned at the borderline range of intellectual functioning, with a verbal intelligence quotient ("IQ") of 65, a performance IQ of 79, and a full scale IQ of 71; she had concentration and memory difficulties; and she was easily confused and distracted.  Tr. 13.

The ALJ acknowledged that in making the RFC assessment, he had considered subjective complaints, including pain, and the extent to which these symptoms can be reasonably accepted as

---

[1]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV").  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome."  *Id.*

[2]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[3]     The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p ("SSR 96-7P") and 20 C.F.R. §416.929.  *Id.*  He discussed Plaintiff's testimony of experiencing heel and back pain so severe as to preclude all levels of work activity, and he compared such testimony with physical examinations which were within normal limits and which further indicated normal gait, normal sensation and reflexes, full range of motion of her ankles, no limping, and normal strength.  *Id.*  He also noted the normal results of lumbar spine x-rays performed in May 2003, the failure of Plaintiff to obtain over-the-counter padding for shoes as advised, and her noncompliance with medications and appointments with her podiatrist.  Tr. 13-14.  The ALJ also noted the apparent lack of treatment for Plaintiff's heel spurs since November 2001.  Tr. 14.

The ALJ also discussed Plaintiff's obesity, noting that this condition had not affected her physical examinations.  *Id.*  He noted that Plaintiff exhibited no evidence of depression in April, June, or October 2001; had a normal mental status examination except for a slightly depressed mood in September 2003; and by January 2004 was no longer taking any medication for depression.  *Id.*  The ALJ also noted evidence indicating that Plaintiff left her last job because of lack of reliable child care, her noncompliance with counseling appointments, and her reports of her own activities, including the ability to cook, shop, care for her children, drive, watch television, and perform some household chores.  *Id.*

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  Tr. 13.  He also found that her mental impairment had mildly restricted her activities; had moderately restricted her ability to maintain social functioning; had caused moderate difficulties in maintaining concentration, persistence, or pace; and had resulted in no episodes of decompensation.  Tr. 15.  He further found that due to Plaintiff's borderline intellectual functioning and depression, she was limited to jobs with

a reasoning development level of 1 to 3, as defined in the *Dictionary of Occupational Titles*, which required no extensive or involved contact with the public. *Id*. The ALJ found that Plaintiff's RFC was not limited by any physical restrictions. *Id*.

The ALJ found that Plaintiff's past relevant work as a cafeteria line worker did not require the performance of work-related activities precluded by her RFC to perform the full range of work, as limited to jobs with a reasoning level of 1 to 3 and no extensive contact with the public. Tr. 15-16. Having found that Plaintiff could perform her past relevant work, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id*.

Plaintiff submitted a Request for Review of Hearing Decision/Order on September 30, 2004. Tr. 7-8. The Appeals Council issued its opinion on November 5, 2004, indicating that it had found no reason under its rules to review the ALJ's decision and denied Plaintiff's request. Tr. 4-6. The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 20, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because she retained the ability to perform her past relevant work. Tr. 16.

### III.   DISCUSSION

Plaintiff claims that the ALJ erred by finding that she could perform her past relevant work as a cafeteria line worker because such work was not performed at a level sufficient to constitute substantial gainful activity. Plaintiff further argues that the ALJ erred by failing to elicit vocational expert testimony to determine what work she would be able to perform. Plaintiff finally argues that expert medical testimony is required to determine whether her verbal IQ score of 65, in combination with other physical or mental impairments, meets or equals the criteria of Section 12.05C of the Listing of Impairments.

**A.      Whether the ALJ erred in finding that Plaintiff could perform her past relevant work.**

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work. Plaintiff alleges that her previous work as a cafeteria line server was not past relevant work because it was not performed at a level sufficient to constitute substantial gainful activity.  Plaintiff also argues that the ALJ failed to develop the evidence to determine whether Plaintiff's work was performed in a satisfactory manner, or was done under special conditions, as described in 20 C.F.R. § 416.973.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

At the hearing, Plaintiff testified that she worked for Marriott. Tr. 20.  She testified that she was a line server, did catering with Marriott, and her duties included wiping the tables, as well as other duties, similar to a waitress.  *Id*.  Plaintiff testified that she worked in a cafeteria at a college. *Id*.  She testified that this was full-time work, 40 hours or more per week, and that she worked there "almost two years." Tr. 20-21.   Plaintiff testified that she was pregnant at the time and stopped her work as a line server because of her pregnancy.  Tr. 21.

In his decision the ALJ noted Plaintiff's testimony indicating that she worked as a line server with Marriott in the early 1990's on a full-time basis for approximately two years. Tr. 16.  He noted that this work did not require the performance of work-related activities precluded by his RFC finding, which limited Plaintiff to work at all exertional levels with a reasoning development level of 1 to 3 as defined in the *Dictionary of Occupational Titles*.  The ALJ ultimately found that Plaintiff could perform her past relevant work as a cafeteria line worker and found Plaintiff not disabled at step 4 of the sequential evaluation process.

Plaintiff argues that her line cafeteria work does not constitute "past relevant work" as defined in the regulations because it was never performed at the level of substantial gainful activity. In support of her argument Plaintiff alleges that in 1990 and 1991, assuming she worked consecutive months, her combined earnings of $4,029.43 indicated average monthly earnings of $176.05 and $159.73, respectively.  Pl. Brief at 5.  Plaintiff correctly notes that the record is silent as to how many months she actually worked.  She argues that even if she worked only 18 months during this period, her average monthly earnings would be, at most, $223.84 per month.  Because this work was not performed at levels sufficient to constitute substantial gainful activity, Plaintiff argues that it cannot be past relevant work.

Pursuant to 20 C.F.R. § 416.974 a claimant's earnings may demonstrate that she has done substantial gainful activity.  20 C.F.R. § 416.974(a)(1).  The amount of earnings, regardless of whether work is sheltered or unsheltered, may show that a claimant has engaged in substantial gainful activity.  *Id*.  Earnings are generally averaged for comparisons with the guidelines.  The guidelines provide that for the time period relevant to this case, monthly averaged earnings of $500 per month will ordinarily show that the claimant has engaged in substantial gainful activity.  20 C.F.R. § 416.974(b)(1)-(b)(2).  Monthly averaged earnings of less than $300 per month during the relevant period ordinarily show that the claimant has not engaged in substantial gainful activity.  20 C.F.R. § 416.972(b)(3).

A claimant's work experience is considered as a vocational factor when it was performed in the last 15 years, lasted long enough for the claimant to learn to perform it, and constituted substantial gainful activity.  20 C.F.R. § 416.965(a).  If a claimant has no work experience or has worked only off-and-on for brief periods of time during the 15-year period, such work is generally not considered as applicable.  *Id*.

Although Plaintiff has provided the court with various computations, these computations have averaged her monthly earnings over a two-year period where the specific number of months that Plaintiff worked is unknown.  However, the specific number of months that Plaintiff worked is not necessary to determine whether her work as a line worker constituted past relevant work that was performed at the level of substantial gainful activity.  As described in 20 C.F.R. § 416.974a(a), if a claimant's work as an employee "was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels," such earnings will be averaged over the entire period of work requiring evaluation to determine if the claimant has done substantial gainful activity.  However, if the claimant works over a period of time during which the substantial gainful activity earnings level changes, or if there is a significant change in work pattern, earnings will be averaged over each separate period of work to determine whether any of the work efforts were substantial gainful activity.  20 C.F.R. § 416.974a(b)-(c).

Plaintiff testified that she worked on a full-time basis for nearly two years, during which time she was pregnant, and indeed stopped working because of her pregnancy, not because of her impairment.  *See* 20 C.F.R. §416.972 (a)(1)(contrasting unsuccessful work attempt with substantial gainful activity).  Plaintiff indicated that she was paid $3.35 per hour.  Tr. 102.  Based on her testimony that she worked full-time at the wage indicated, the record demonstrates that *when* Plaintiff worked (i.e., when her work was not interrupted or stopped because of pregnancy), her monthly average was sufficient to constitute substantial gainful activity.  Plaintiff earned $2,112.28 in 1990 — approximately 631 hours.  *See* Tr. 74.  Working a 40-hour week, as stated in Plaintiff's testimony, indicates that she worked about 15.7 weeks, and her monthly average was just above $500.  Similarly, in 1991, Plaintiff earned $1,916.83.  Tr. 74.  At $3.35 per hour, with a regular 40-hour work week, Plaintiff worked about 14 weeks, and her monthly average was again just above $500.  These averages appropriately consider the change in work patterns during this period, as

provided in 20 C.F.R. 20 C.F.R. § 416.974a.  Under 20 C.F.R. §416.974(b)(2), these amounts would ordinarily show that Plaintiff had engaged in substantial gainful activity.

Plaintiff also argues that even if her averaged monthly earnings did fall between $300 and $500, her sporadic and short-term employment history, when considered in conjunction with her borderline intellectual functioning and major depression, raises the issue of sheltered employment or subsidized employment.  Plaintiff argues that because this issue was raised, the ALJ failed to develop the evidence and determine whether Plaintiff's work was performed in a satisfactory manner or was performed under sheltered or subsidized conditions.

The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)(quoting *Newton*, 209 F.3d at 458).  The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act.  *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).  The court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)).  In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Although Plaintiff argues that her borderline intellectual functioning, depression, and work history "raises the issue of sheltered or subsidized employment," she has pointed to no evidence in the record actually raising this issue.  Even if she did, this court will not reverse for a failure to develop the record unless Plaintiff can show that she was prejudiced as a result.  Plaintiff has failed to show that she could and would have adduced evidence that would have altered the ALJ's decision and has thus failed to demonstrate prejudice.

I find that the ALJ did not err by finding that Plaintiff could return to her past relevant work, nor did he err by implicitly finding that Plaintiff's past work as a line worker at a cafeteria constituted substantial gainful activity. I further find that the ALJ did not err by failing to elicit further evidence as to whether Plaintiff's work constituted sheltered or subsidized employment.

**B.     Whether the ALJ erred in finding that Plaintiff could perform any work.**

Plaintiff argues that the ALJ erred by failing to obtain expert vocational testimony as to whether Plaintiff could perform work and erred by failing to obtain expert medical testimony to determine whether her verbal IQ score of 65 in combination with other mental or physical impairments meets or equals the criteria of Section 12.05C of the Listing of Impairments.

Plaintiff argues that the ALJ inappropriately applied the Medical-Vocational Guidelines ("Grids") to direct a finding of disabled because of her nonexertional limitations.  As Plaintiff correctly notes, where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework.  Application of the Grids is appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).  However, in this case the ALJ did not apply the Grids at step 5 of the sequential evaluation process to direct a finding of not disabled.  Rather, the ALJ found at step 4 that Plaintiff retained the RFC to perform her past relevant work.  Plaintiff's argument that the ALJ inappropriately applied the Grids and failed to obtain expert vocational testimony to determine what work she could perform is without merit.

Plaintiff also claims that the ALJ erred in evaluating her mental impairment.  Plaintiff specifically argues that the ALJ was required to obtain medical expert testimony to determine

whether her mental impairment met or equaled in severity Section 12.05C of the Listing of Impairments.

The record demonstrates that Plaintiff underwent a psychological consultative examination by Stephen M. Osborn, Ph.D., on December 27, 2001. Tr. 200-03. Dr. Osborn indicated that on the Weschler Adult Intelligence Scale - Revised ("WAIS-R"), Plaintiff earned a verbal IQ of 65, a performance IQ of 79, and a full scale IQ of 71. Tr. 201. He stated that these scores indicated that she was functioning "within the borderline range of general intelligence." Tr. 203. Dr. Osborn noted some variability and indicated that Plaintiff "may have slightly higher performance ability than was noted on this occasion." Tr. 201. He also noted Plaintiff's report of both English and Spanish being spoken at home while she was growing up, which might account for part of the verbal/performance discrepancy. *Id.*

Section 12.05 of the Listing of Impairments, dealing with mental retardation, defines this impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05. This section indicates that presumptive disability under the Listing of Impairments is established "when the requirements in A, B, C, or D are satisfied." *Id.* Section 12.05(C) defines an impairment to include a valid verbal, performance, or full scale IQ score of 60-69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function. "A claimant must prove both of these conditions in order to meet his burden under step three." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 110 S. Ct. 885, 891-92 (1990)). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders*, 914 F.2d at 619 (citing 20 C.F.R. § 404.1526(a)).

The ALJ noted that testing indicated that Plaintiff was functioning in the borderline range, with a verbal IQ of 65, a performance IQ of 79, and a full scale IQ of 71.  Tr. 13.  The ALJ discussed these findings and also noted testing which indicated that Plaintiff functioned at the 6th grade level for vocabulary and spelling; at the 5th grade level for reading comprehension, number operations, and problem solving; and at the 3rd grade level for language. *Id*.  He also noted that Plaintiff had concentration and memory difficulties and was easily distracted and confused.  *Id*.  The ALJ found that Plaintiff's medically determinable impairments did not meet or equal in severity any impairment listed in the Listing of Impairments.  Tr. 12A.

Plaintiff argues that she may have the requirements of Section 12.05C of the Listing of Impairments, having shown a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 4, Subpt. P, App. II, § 12.05C.  Plaintiff argues that the ALJ was required to obtain medical expert testimony to determine whether his impairments met the criteria of Section 12.05C, thereby establishing presumptive disability.

Plaintiff's argument is two-fold.  She argues that an IQ test administered after the age of 22 creates a rebuttable presumption that mental retardation is "a lifelong condition," as defined by 20 C.F.R. Pt. 4, Subpt. P, App. I, § 12.00(B)(4).  She argues that she need not present evidence of deficits in adaptive functioning prior to the attainment of age 22, citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).  As a result, Plaintiff argues that the she need not show onset prior to age 22,  and expert medical testimony was necessary to determine whether she met the criteria of Section 12.05C.

Section 12.00(A) describes the structure for evaluation of mental impairments under § 12.05 of the Listing of Impairments:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).  Section 12.05 clearly provides that in order to meet the Listing criteria for mental retardation, a claimant's mental impairment must first satisfy the diagnostic criteria – that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05.

Plaintiff points to *Hodges v. Barnhart*, wherein the Eleventh Circuit noted that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [the claimant's] life."  *See Hodges*, 276 F.3d at 1268 (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)).  However, the presumption that Plaintiff's IQ has remained stable is insufficient to demonstrate that Plaintiff has met the criteria of Listing 12.05.  Intelligence tests play an important role in verifying mental retardation but are not the sole measure.  The Commissioner's *Programs Operations Manual System* ("*POMS*"),[4] describes the relationship of adaptive behavior to IQ scores.  *See POMS* § DI 24515.056(D)(2).  This  section notes:

> The term "adaptive behavior" refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age.  Indicators of adaptive behavior include childhood development milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements.  The judgment of an MC [medical consultant] is necessary to affirm that adaptive behavior is consistent with IQ test results.

---

[4]      The POMS  may be found at the Social  Security Administration Policy Information Site, located at:  http://policy.ssa.gov/poms.nsf/partlist!OpenView.

POMS § DI 24515.056(D)(2). The psychological consultative examiner ("CE") noted that on testing, Plaintiff  earned a verbal IQ of 65, a performance IQ of 79, and a full scale IQ of 71.  Tr. 201.  He stated that these scores indicated that she was functioning "within the borderline range of general intelligence."  Tr. 203.  He also noted that Plaintiff "may have slightly higher performance ability than was noted on this occasion."  Tr. 201.  He also noted Plaintiff's report of both English and Spanish being spoken at home while she was growing up, which might account for part of the verbal/performance discrepancy.  *Id*.  The psychological CE opined that Plaintiff's testing did not indicate a learning disorder.  Tr. 202.  He noted Plaintiff's report of graduating from high school in the special education program.  Tr. 200. The psychological CE opined that Plaintiff "does have the necessary minimal academic and intellectual ability to successfully function" as a childcare worker, which he indicated was a possible vocational objective for her.  Tr. 203.

Section 12.00(D)(6) further describes the role that intelligence tests play in evaluating mental retardation for a determination of presumptive disability, noting that "[t]he  results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00(D)(6)(a).  Thus, although Plaintiff argues that her verbal IQ score, if presumed constant throughout her life, is sufficient to demonstrate onset before age 22, IQ tests alone do not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00(D)(6).  The Eighth Circuit found, for example, that an ALJ may reject IQ

scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist. *See Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)(finding the ALJ properly rejected IQ scores that were the product of one meeting with a non-treating psychologist and were inconsistent with claimant's daily activities, and no medical records indicated that she was mentally retarded prior to age 22); *see also, Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

Plaintiff further argues that medical expert testimony is necessary to determine whether her verbal IQ score, combined with her other impairments, meets or equals Section 12.05C in severity. While evaluation of the consistency of IQ scores and adaptive behavior is an issue for a medical consultant, the ALJ may properly consider the opinions of such consultants with the claimant's activities and work history. *Compare POMS*, § DI 24515.056(D)(2) with *Higgins v. Barnhart,* 288 F. Supp. 2d 811, 819 (S.D. Tex. 2002)(citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990))(finding that the claimant's ability to work as a housekeeper, despite her mental limitations, constituted additional indicia militating against a finding that her adaptive functioning was deficient to a degree that would be reasonably considered disabling). The psychological CE specifically indicated that Plaintiff's verbal IQ score likely reflected her history of no formal education and bilingual upbringing. Tr. 202. He also noted that Plaintiff's performance IQ score of 79 might actually be higher. *Id.* The CE specifically opined that although Plaintiff might be limited in the types of occupations at which she might be successful, she had the necessary minimal academic and intellectual ability to successfully function in certain types of work. Tr. 203. The ALJ found that Plaintiff had no other additional and significant work-related limitation of function, beyond a limitation to jobs with a reasoning development level of 1 to 3. Tr. 15. He noted Plaintiff's daily activities, including her ability to care for her children, handle her finances, cook, watch television,

go shopping, drive, and go out to eat.  Tr. 14.  The *POMS* provides that "Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment.  The criteria for this paragraph are such that a medical equivalence determination would very rarely be required." *POMS* § DI 24515.056 (D)(1)(c).  The record does not demonstrate that additional expert testimony was necessary to make the determination of equivalency.

Plaintiff must prove that he meets the criteria of § 12.05C of the Listing of Impairments in order to meet his burden under step three.  *Selders*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521).  She must provide medical findings that support each of the criteria for the equivalent impairment determination.  *Id*.  She must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05.  Plaintiff specifically alleges that she may be presumptively disabled under § 12.05C.  Under this section, "[s]tandardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A."  20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00(D)(6)(b).  While it is clear that mental retardation may be verified by evidence such as IQ tests, medical findings to support these criteria are necessary.  *Selders*, 914 F.2d at 619.  The psychological CE opined that Plaintiff functioned at the borderline intellectual level and further opined that Plaintiff had the necessary minimal academic and intellectual ability to successfully perform certain types of work.  I find that the ALJ did not err by failing to consider whether Plaintiff's mental impairment equaled Section 12.05C or by failing to obtain additional medical expert opinion to determine whether Plaintiff's verbal IQ score of 65, in combination with other mental or physical impairments, meets or equals the criterial of Section 12.05C of the Listing of Impairments.  I further find that his opinion is supported by substantial evidence.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 9th day of February, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**